# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEANNA HICKS, on behalf of herself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| *Plaintiff,* | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| RALEIGH OPHTHALMOLOGY, P.C., a North Carolina professional corporation, | : | **JURY TRIAL DEMANDED** |
| *Defendant.* | : | |

## CLASS ACTION COMPLAINT

Plaintiff DeAnna Hicks ("Plaintiff" or "Hicks") brings this Class Action Complaint and Demand for Jury Trial against Raleigh Ophthalmology, P.C. ("Defendant" or "Raleigh Ophthalmology") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded telemarketing calls to consumers without consent, including calls to phone numbers that are registered on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Hicks, for this Complaint, alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys, as follows:

## PARTIES

1. Plaintiff Hicks is, and at all times relevant to this action was, a Youngsville, North Carolina resident.

2. Defendant Raleigh Ophthalmology is a North Carolina registered professional corporation headquartered in Raleigh, North Carolina. Raleigh Ophthalmology conducts business throughout this District and North Carolina.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and the venue is proper under 28 U.S.C. § 1391(b) because the Defendant does business in this District, and the calls at issue were directed to the Plaintiff who resides in this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2024 alone, at a rate of 146.9 million calls per day. www.robocallindex.com (last visited June 2, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

# COMMON ALLEGATIONS

14. Defendant Raleigh Ophthalmology is an eye care medical practice that provides medical and surgical eye care to North Carolina residents.[3]

15. To solicit its services, Defendant Raleigh Ophthalmology places telemarketing calls, including calls that use pre-recorded voice messages to consumers.

16. Many of these calls are also being placed to consumers despite their having registered their phone numbers on the DNC, as per Plaintiff's experience.

17. Raleigh Ophthalmology utilizes Vital Interaction to automate appointment scheduling and reminders:



The process improvements with Raleigh Ophthalmology didn't stop there. The team identified their manual referral process as another opportunity to leverage Vital Interaction's robust system. Struggling to keep up with the stacks of paper fax referrals coming in, and unable to easily track outreach and deliver outcomes to referring providers, it was clear that a more automated approach was required. Working with their Vital Interaction account manager, they built a customized cadence to follow up with referrals via text, email, and voice. The result is increased efficiency (**a 68% reduction in outbound call volume**), more referred patients being seen, and even better relationships with referring practices who now receive outcome information generated from Vital Interaction's reporting engine.

---

[3] https://www.linkedin.com/company/raleigh-ophthalmology/about/
[4] https://www.vitalinteraction.com/raleigh-ophthalmology/

18. As per the above, Vital Interaction provides automated patient solutions to medical providers, like Raleigh Ophthalmology. These solutions do include pre-recorded calls, as per Plaintiff's experience:

[5]

19. To make matters worse, Defendant Raleigh Ophthalmology continues to place pre-recorded and other solicitation calls to consumers who ask for the calls to stop.

20. In response to these calls, Plaintiff Hicks files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF HICKS'S ALLEGATIONS**

21. Plaintiff Hicks is the subscriber of the cell phone number ending in 3637.

22. Plaintiff Hicks registered her cell phone number on the Do Not Call registry on August 11, 2006.

23. Plaintiff Hicks uses her cell phone for personal use only to communicate mainly with friends and family.

---

[5] https://www.vitalinteraction.com/solutions/

24. Plaintiff Hicks's cell phone number has never been associated with a business.

25. Plaintiff Hicks's cell phone number is registered under her name.

26. Plaintiff Hicks's cell phone number is registered through Spectrum under a personal use plan, not a business plan.

27. The calls that Plaintiff Hicks received from Defendant Raleigh Ophthalmology were all received more than 30 days after Plaintiff registered her cell phone number on the DNC.

28. Due to some issues that Plaintiff Hicks was experiencing with her eyesight, her optometrist provided a referral to Raleigh Ophthalmology.

29. Plaintiff did not fill out any paperwork or provide any consent to Raleigh Ophthalmology to receive pre-recorded or other solicitation calls.

30. On April 11, 2024 at 9:28 AM, Plaintiff Hicks received an unsolicited pre-recorded call to her cell phone from 919-373-6058.[6]

31. When Plaintiff Hicks answered this call, an automated prerecorded system stated that the call was from Raleigh Ophthalmology.

32. Plaintiff Hicks had to select options from an automated menu so she could be connected to a live employee.

33. After a delay of a few minutes, Plaintiff Hicks was connected to a live employee who confirmed the company name Raleigh Ophthalmology. The employee wanted to book an appointment for Plaintiff to get an eye examination. Plaintiff stated that she was not interested in booking an appointment with Raleigh Ophthalmology.

---

[6] When 919-373-6058 is dialed, an automated system identifies the company name Raleigh Ophthalmology and asks the caller to book an appointment.

6

34. When Plaintiff ended this call, she found that she also received a text message from Raleigh Ophthalmology to her cell phone from 919-373-6058 on April 11, 2024 at 9:28 AM asking her to book an appointment:



35. In response to the text message, Plaintiff replied "STOP" to 919-373-6058.

36. Despite her clear stop request, Plaintiff Hicks received a 2nd unsolicited pre-recorded call from Raleigh Ophthalmology to her cell phone on April 18, 2024 at 9:27 AM from 919-373-6058.

37. As with the previous call, an automated system identified the company name Raleigh Ophthalmology. Plaintiff Hicks then had to select from a menu to speak to a live employee.

38. When Plaintiff Hicks was connected to a live employee, Plaintiff told the employee that she would not do business with a company that was placing unsolicited pre-recorded calls to her cell phone. She then asked the employee to make sure that Raleigh Ophthalmology would not call her cell phone number again.

39. On April 24, 2024 at 9:19 AM, Plaintiff Hicks received an unsolicited call from Raleigh Ophthalmology to her cell phone from 919-373-6058.

40. When Plaintiff answered this call, a live employee said they were calling from Raleigh Ophthalmology to schedule an appointment.

41. Plaintiff Hicks told the employee that Raleigh Ophthalmology was not supposed to be calling her cell phone number.

42. In response, the employee said that they would remove Plaintiff's cell phone number from Raleigh Ophthalmology's system.

43. On May 9, 2024 at 9:34 AM, Plaintiff Hicks received yet another unsolicited pre-recorded call to her cell phone from Raleigh Ophthalmology, from 919-373-6058.

44. An automated prerecorded system identified the company name Raleigh Ophthalmology.

45. Plaintiff Hicks was upset about this unsolicited call, so she selected an option to speak to an employee and waited.

46. After a few minutes, an employee named Nancy came on the line and said she wanted to book an appointment for Plaintiff.

47. Plaintiff Hicks told Nancy that she would never do business with Raleigh Ophthalmology because of the unsolicited pre-recorded calls.

48. Nancy told Plaintiff that she would let the referral coordinator know to take the referral out of Raleigh Ophthalmology's system and not call Plaintiff again.

49. Plaintiff Hicks was still very upset about the unsolicited pre-recorded calls that she was receiving. Nancy suggested that Plaintiff should speak to a manager to provide feedback about

the pre-recorded calls.

50. Plaintiff Hicks was put on hold for a few minutes before Nancy came back on the line, explaining that all the managers were in a meeting. Plaintiff was then transferred to the voicemail of a manager named Shelly.

51. Shelly's voicemail indicated that she was a practice administrator.

52. Plaintiff left a voicemail for Shelley.

53. On May 9, 2024 at 3:09 PM, Plaintiff Hicks received a call back from Shelly to her cell phone.

54. Plaintiff Hicks explained to Shelly that she was receiving unsolicited pre-recorded calls despite asking for the calls to stop.

55. Shelly explained that Raleigh Ophthalmology is very busy, so they don't have enough staff to personally call each potential customer. She then confirmed that Raleigh Ophthalmology would stop calling Plaintiff's cell phone number.

56. Despite all the stop requests and assurances that the calls would stop, Plaintiff Hicks received another unsolicited pre-recorded call to her cell phone from Raleigh Ophthalmology on May 15, 2024 at 9:08 AM from 919-373-6058.

57. When Plaintiff Hicks answered this call, an automated prerecorded system stated the company name Raleigh Ophthalmology.

58. Plaintiff hung up the phone as soon as the company name was stated.

59. Plaintiff Hicks has never consented to be called by Defendant Raleigh Ophthalmology using a pre-recorded voice message call or otherwise.

60. The unauthorized pre-recorded calls that Plaintiff Hicks received from Defendant

Raleigh Ophthalmology have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery), the consumption of memory on the phone.

61. The calls that Plaintiff Hicks received also took up her time, as she would answer and spend time connecting to live employees so she could ask for the calls to stop.

62. Seeking redress for these injuries, Plaintiff Hicks, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ACTION ALLEGATIONS

63. Plaintiff Hicks brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant, or an agent calling on behalf of the Defendant, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call the Plaintiff.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time for the same reason Defendant called Plaintiff, (2) within any 12-month period, (3) where the person's residential phone number had been listed on the National Do Not Call Registry for at least thirty days.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time on their residential number for the same reason Defendant called Plaintiff, (2) within any 12-month period, (3) including at least once after the person requested that Defendant stop calling.

64. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their

subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Hicks anticipates the need to amend the Class definitions following appropriate discovery.

65. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant placed pre-recorded voice calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) Whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(c) Whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether Defendant's conduct violated the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

67. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

68. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Hicks. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hicks and the Pre-recorded No Consent Class)**

69. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

70. Defendant Raleigh Ophthalmology and/or its agents transmitted unwanted telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using pre-recorded calls.

71. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

72. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hicks and the Do Not Call Registry Class)**

73. Plaintiff repeats and realleges paragraphs 1-68 of this Complaint and incorporates them by reference herein.

74. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

75. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

76. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

77. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

78. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hicks and the Internal Do Not Call Class)**

79. Plaintiff repeats and realleges paragraphs 1-68 of this Complaint and incorporates them by reference herein.

80. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing

calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect

them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

81. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class on behalf of Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

82. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

83. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Hicks requests a jury trial.

Dated this 13th day of August, 2024.

**DEANNA HICKS**, individually and on behalf of all others similarly situated,


By: /s/ *Ryan Duffy*
The Law Office of Ryan P. Duffy, PLLC
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Classes*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*

*Pro Hac Vice motion forthcoming